**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

| | |
|---|---|
| DONALD A. SCOTT JR., | Case No. 2:17-cv-01066-APG-VCF |
| Plaintiff, | **ORDER AND REPORT & RECOMMENDATION** |
| vs. | APPLICATION TO PROCEED *IN FORMA PAUPERIS* (ECF NO. 1) AND COMPLAINT (ECF NO. 1-1) |
| HARRAH'S LLC, | |
| Defendant. | |

This matter involves Plaintiff Donald A. Scott Jr.'s disability discrimination action against Defendant Harrah's LLC. Before the Court is Scott's Application to Proceed *in Forma Pauperis* (ECF No. 1[1]) and Complaint (ECF No. 1-1). For the reasons stated below, Scott's Application to Proceed *in Forma Pauperis* is granted. Scott's Complaint should be dismissed with prejudice.

## I. BACKGROUND

Plaintiff Donald A. Scott Jr. alleges that he worked at Harrah's Hotel & Casino from October 2006 to December 2015—a period of about 9 years. *See* ECF No. 1-1 at 6. In 2014, Scott asserts that he informed Harrah's management that he suffered from drug use/addiction. *Id*. Scott claims that he voluntarily sought treatment and rehab services. *Id*. According to Scott, Harrah's accommodated his drug treatment by adjusting his work schedule. *Id*. Scott alleges that Harrah's management "suspected [Scott]

---

[1] Parenthetical citations refer to the court's docket.

1

to be under the influence and spoke to [him] on multiple occasions." *Id*. But after each time, Scott returned to his work. *Id*. In November 2015, Scott returned to rehab. *Id*. at 7. According to Scott, Harrah's management was aware of his return to rehab. *Id*. On December 7, 2015, Harrah's randomly drug tested Scott, suspending him without pay pending the results. *Id*. The results came back positive. *Id*. Scott acknowledges that he "used marijuana approximately 2 to 3 weeks before the drug test." *Id*. at 8. Harrah's management allegedly told Scott that he was not taking his rehab and treatment program seriously. *Id*. On the day before Christmas, Harrah's fired Scott.

Scott brings claims for disability discrimination, wrongful termination, and retaliation against Harrah's. ECF No. 1-1 at 4.

## II. DISCUSSION

Scott's filings present two questions for this Court: (1) whether Scott may proceed *in forma pauperis* under 28 U.S.C. § 1915(e) and (2) whether Scott's complaint states a plausible claim for relief.

### A. In Forma Pauperis

Under 28 U.S.C. § 1914(a), a filing fee is required to commence a civil action in federal court. The Court may authorize the commencement of an action without prepayment of fees and costs or security therefor, by a person who submits an affidavit that includes a statement showing the person is unable to pay such costs. *See* 28 U.S.C. § 1915(a)(1). The standard governing *in forma pauperis* eligibility under 28 U.S.C. § 1915(a)(1) is "unable to pay such fees or give security therefor." Determination of what constitutes "unable to pay" or unable to "give security therefor" and, therefore whether to allow a plaintiff to proceed *in forma pauperis*, is left to the discretion of the presiding judge, based on the information submitted by the plaintiff or plaintiffs. *See, e.g.*, *Fridman v. City of New York*, 195 F. Supp. 2d 534, 536 (S.D.N.Y.), *aff'd*, 52 Fed. Appx. 157 (2nd Cir. 2002).

Scott asserts in his application to proceed *in forma pauperis* that he does not earn any income. ECF No. 1 at 1. He previously worked as a dice dealer at Tuscany Suites and Casino making minimum wage plus tips for about a year until March 2017. *Id*. He is living with his family and has no savings. *Id*. at 2. Scott has monthly expenses of about $565, including $75 for rent, $40 for his cell phone, and $450 for child support. *Id*. Scott took out multiple cash loans totaling $500. *Id*. The Court grants Scott's application to proceed *in forma pauperis*.

**B. Screening the Complaint**

    **a. Legal Standard**

After a court grants a plaintiff *in-forma-pauperis* status, it must review the operative complaint to determine whether it is "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2). This review is guided by two legal standards: (1) Federal Rule of Civil Procedure 8 and (2) the Supreme Court's decision in *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

Fed. R. Civ. P. 8(a) provides that a complaint "that states a claim for relief must contain … a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court's decision in *Ashcroft v. Iqbal* states that in order to satisfy Rule 8's requirements a complaint's allegations must cross "the line from conceivable to plausible." 129 S. Ct. 1937, 1950-51 (2009). The Court's decisions in *Bell Atlantic Corp. v. Twombly* and *Iqbal* prescribe a two-step procedure for determining whether a complaint's allegations cross that line. 127 S. Ct. 1955, 1965 (2007).

First, the Court must identify "the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1951. Factual allegations are not entitled to the assumption of

truth if they are "merely consistent with liability," *Id*. at 1949, or "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional" claim. *Id*. at 1951.

Second, the Court must determine whether the complaint states a "plausible" claim for relief. *Id*. at 1950. A claim is "plausible" if the factual allegations, which are accepted as true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1940. This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 1950 (citation omitted).

If the factual allegations, which are accepted as true, "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (citing Fed. R. Civ. P. 8(a)(2)).

But where a *pro se* litigant is involved, courts are directed to hold the litigant to "less stringent standards." *See Kerner*, 92 S. Ct. at 596; *see also Hughes v. Rowe*, 101 S. Ct. 173, 176 fn. 7 (1980). "Such litigants often lack the resources and freedom necessary to comply with the technical rules of modern litigation." *Mala v. Crown Bay Marina, Inc*., 704 F.3d 239, 244–45 (3d Cir. 2013) (citing *Moore v. Florida*, 703 F.2d 516, 520 (11th Cir. 1983)).

If the court dismisses a complaint under section 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) (citation omitted).

### b. Analysis

Scott brings claims for disability discrimination, wrongful termination, and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et. seq*.

4

The ADA prohibits discrimination against "a qualified individual on the basis of disability in regard to … the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

Before bringing suit in federal court, the ADA requires a plaintiff to exhaust both state and Equal Employment Opportunity Commission ("EEOC") administrative procedures. *See* 42 U.S.C § 2000e-5(f)(1); 42 U.S.C. § 12117 (incorporating 42 U.S.C. § 2000e-5); *Leong v. Potter*, 347 F.3d 1117, 1121 (9th Cir. 2003). After a plaintiff files charges with the EEOC, the commission will investigate, attempt to reach a settlement, and decide whether to sue the employer or refer the decision to sue to the Attorney General if the charges are against a state or local governmental entity. Such charges are required to be filed within 180 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1). However, the limitations period is extended to 300 days if the plaintiff first institutes proceedings with a "State or local agency with authority to grant or seek relief from such practice." *Id*. "Although failure to file a timely EEOC charge is not a complete bar to district court jurisdiction, substantial compliance with the exhaustion requirement is a jurisdictional pre-requisite." *Leong*, 347 F.3d at 1122 (citing *Sommatino v. United States*, 255 F.3d 704, 708 (9th Cir. 2001). If the EEOC or Attorney General decides not to sue, and if there is no settlement that is satisfactory to plaintiff, the EEOC will issue plaintiff a right-to-sue letter. *See* 42 U.S.C. § 2000e–5(f)(1). After receipt of the right to sue letter, plaintiff may sue in federal or state court. *Id.*; *see also Yellow Freight Sys., Inc. v. Donenelly*, 494 U.S. 820, 825–26, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990).

Here, Scott has not attached a right to sue letter from the EEOC. Nor has Scott even alleged that he filed charges—let alone whether they were timely—with the EEOC. Thus, it appears Scott did not exhaust his administrative remedies. The 180-day statute bars Scott's claims because he failed to timely file his charges with the EEOC. *See* 42 U.S.C. § 2000e–5(e); *see also Kraja v. Bellagio, LLC*,

215CV01983APGNJK, 2017 WL 1293974, at *5 (D. Nev. Mar. 31, 2017); *Magdaluyo v. MGM Grand Hotel, LLC*, 214CV01806APGGWF, 2017 WL 736875, at *3 (D. Nev. Feb. 24, 2017).

Scott's Complaint fails to state a claim upon which relief can be granted. To state a claim for disability discrimination under the ADA, a Plaintiff must allege that he: (1) is a disabled person within the meaning of the ADA; (2) is qualified to perform the essential functions of his position with or without a reasonable accommodation; and (3) suffered an adverse employment action because of his disability. 42 U.S.C. 12112.

The term "qualified individual" means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m). A "disability" means an individual: (1) has a physical or mental impairment that substantially limits one or more of his major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(1).

Drug addiction that "substantially limits" one or more major life activities of an individual is a recognized disability under the ADA. *See Thompson v. Davis*, 295 F.3d 890, 896 (9th Cir. 2002). Yet the term "individual with a disability" does not include "an individual who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use." 42 U.S.C. § 12210(a). The term "currently engaging" is not intended to be limited to the use of drugs on the day of, or within a matter of days or weeks before, the employment action in question. Rather, the provision is intended to apply to the illegal use of drugs that has occurred recently enough to indicate that the individual is actively engaged in such conduct. The Ninth Circuit has interpreted 'currently engaging' as applying "only to employees who have [not] refrained from using drugs for a *significant period of time*." *See Brown v. Lucky Stores,*

*Inc.*, 246 F.3d 1182, 1186-1188 (9th Cir. 2001) (emphasis added); *see also Collings v. Longview Fibre Co.*, 63 F.3d 828, 833 (9th Cir. 1995).[2]

The ADA does protect an individual who has successfully completed or is participating in a supervised drug rehabilitation program and is no longer using illegal drugs, as well as an individual that is erroneously regarded as using drugs when in fact he or she is not. 42 U.S.C. § 12210(b). That subsection notes an exception: it is not a violation for a business to adopt or administer reasonable policies or procedures, including drug testing, that are designed to ensure that an individual who has successfully completed or is participating in a supervised rehabilitation program is no longer using illegal drugs. *Id.*; 29 C.F.R. § 1630.3(b)-(c); 29 C.F.R. § 1630.16(c).[3]

Based on the allegations in the Complaint, Scott does not qualify as a "qualified individual with a disability" under the ADA. The disability claimed by Scott is that he is a drug addict. He does not allege that his drug addiction substantially limited one or more major life activities. In any event, the term "individual with a disability" does not include "an individual who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use." 42 U.S.C. § 12210(a). Scott's Complaint alleges that he used marijuana about 2 weeks before Harrah's drug tested him. Shortly after the results

---

[2] *Shafer v. Preston Mem'l Hosp. Corp.*, 107 F.3d 274, 278 (4th Cir. 1997) ("[T]he ordinary or natural meaning of the phrase "currently using drugs" does not require that a drug user have a heroin syringe in his arm or a marijuana bong to his mouth at the exact moment contemplated. Instead … the plain meaning of "currently" is broader …[and] means a periodic or ongoing activity in which a person engages (even if doing something else at the precise moment) that has not yet permanently ended. For example, 'Dr. Hawking is *currently* engaged in scientific research,' and 'Star Wars is *currently* playing at a local theater' … Accordingly, under the plain meaning of the statutes, an employee illegally using drugs in a periodic fashion during the weeks and months prior to discharge is 'currently engaging in the illegal use of drugs'), *abrogated on other grounds by Baird ex rel. Baird v. Rose*, 192 F.3d 462, 465 (4th Cir. 1999).

[3] *See also* H.R. Conf. Rep. No. 101–596, at 64 (1990), *reprinted in* 1990 U.S.C.C.A.N. 267, 565, 573 ("The safe harbor provision does not permit persons to invoke the Act's protection simply by showing that they are participating in a drug treatment program. Rather, refraining from illegal use of drugs is also essential. Employers are entitled to seek reasonable assurances that no illegal use of drugs is occurring or has occurred recently enough so that continuing use is a real and ongoing problem").

7

came back positive, he was fired. Under Ninth Circuit precedent, using drugs in a periodic fashion during the weeks and months prior to discharge qualifies as "currently engaging in the illegal use of drugs." Scott's illegal use of drugs occurred recently enough to indicate that he was actively engaged in such conduct. Therefore, the allegations in Scott's Complaint indicate that he did not refrain from using drugs for a "significant period of time" prior to being drug tested and fired shortly thereafter. *Brown*, 246 F.3d at 1186-1188.

The Complaint also alleges that Scott "had been pulled into his supervisor's office under suspicion that he was under the influence at least 4 times," and that Harrah's management "continued to scrutinize [him] looking for any signs that he was under the influence." ECF No. 1-1 at 7. Scott previously informed Harrah's management that he suffered from drug use/addiction and that he sought treatment and rehab services for his addiction. But because Harrah's management "suspected [Scott] to be under the influence," they were within their rights under the ADA when they "spoke to [Scott] on multiple occasions." *Brown*, 246 F.3d at 1188 ("Employers are entitled to seek reasonable assurances that no illegal use of drugs is occurring or has occurred recently enough so that continuing use is a real and ongoing problem"); 42 U.S.C. § 12114(c) ("A covered entity … may require that employees shall not be under the influence of … or … engaging in the illegal use of drugs at the workplace").

In sum, Scott's complaint should be dismissed with prejudice for two reasons. *See Cato*, 70 F.3d at 1106. First, Scott neither attached a right to sue letter from the EEOC, nor alleged that he filed charges—let alone whether they were timely—with the EEOC. Failing to timely file charges with the EEOC bars Scott's claims. Further, Scott's Complaint fails to state a claim upon which relief can be granted. Scott does not qualify as a "qualified individual with a disability" because his Complaint alleges that he used drugs shortly before Harrah's acted on the basis of such use.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Scott's Application to Proceed *In Forma Pauperis* (ECF No. 1) is GRANTED.

IT IS FURTHER ORDERED that the Clerk of Court file the complaint.

IT IS FURTHER ORDERED that Scott is permitted to maintain the action to conclusion without the necessity of prepayment of any additional fees, costs, or security. This order granting *in forma pauperis* status does not extend to the issuance of subpoenas at government expense.

IT IS RECOMMENDED that Plaintiff's Complaint (ECF No. 1-1) be DISMISSED WITH PREJUDICE.

/ / /

/ / /

/ / /

# **NOTICE**

Pursuant to Local Rules IB 3-1 and IB 3-2, a party may object to orders and reports and recommendations issued by the Magistrate Judge. Objections must be in writing and filed with the Clerk of the Court within 14 days. LR IB 3-1, 3-2. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist*., 708 F.2d 452, 454 (9th Cir. 1983).

Pursuant to Local Special Rule 2-2, the Plaintiff must immediately file written notification with the court of any change of address. The notification must include proof of service upon each opposing party of the party's attorney. **Failure to comply with this Rule may result in dismissal of the action**. *See* LSR 2-2.

DATED this 9th day of May, 2017.

_____

CAM FERENBACH

UNITED STATES MAGISTRATE JUDGE